Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Hans L. Mayer (SBN 291998)
hans.mayer@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: (310) 551- 3450
Facsimile: (310) 601-1263

Nicholas A. Belair (SBN 295380)
nick.belair@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
333 Bush St., 21st Fl.
San Francisco, CA 94104
Telephone: (415) 217-8399
Facsimile: (415) 954-4111

Attorneys for Defendant
WHALECO, INC., D/B/A TEMU

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TWENTY ONE PILOTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WHALECO, INC., a Delaware Corporation, individually, and doing business as "Temu"; and DOES 1-10,<br><br>Defendants | Case No.: 2:25-cv-08521-WLH-PD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE**<br><br>Hearing Date:  March 20, 2026<br>Hearing Time:  1:30 p.m.<br>Courtroom:        9B<br>Judge: Honorable Wesley L. Hsu |

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ...................................................................................1

II.     TEMU'S BUSINESS MODEL AS AN ONLINE
        MARKETPLACE ..................................................................................2

III.    LEGAL STANDARDS ..........................................................................3

IV.     ARGUMENT ........................................................................................4

        A.      TOP Fails to State a Claim for Trademark Infringement ...................4

                1.      TOP Fails to Plausibly Plead Use in Commerce ......................5

                        a.      The Court Should Not Accept TOP's
                                Contradictory Allegations ............................................5

                        b.      Temu is an Online Sales Platform and Is Not
                                Liable for Any Alleged Infringement............................8

                        c.      TOP's Remaining Allegations are Conclusory
                                and Devoid of Factual Support......................................9

                2.      TOP Fails to Plausibly Plead a Likelihood of
                        Confusion ..................................................................................12

                3.      TOP Fails to Plausibly Plead Trademark Dilution ................13

                        a.      TOP's Fails To Plausibly Plead That Temu
                                Used The Alleged Marks In Commerce Or
                                When The Alleged Marks Became Famous..................13

                        b.      TOP's Dilution Claims Are Conclusory ......................13

        B.      TOP Fails to State a Claim for Contributory Trademark
                Infringement................................................................................14

        C.      TOP Fails to State a Claim for Unfair Competition .........................16

                1.      TOP's Statutory Unfair Competition Claim (Third
                        Claim for Relief) Fails for the Same Reasons as its
                        Trademark Infringement Claims..............................................16

                2.      TOP Fails to Plausibly Plead a Common Law Unfair
                        Competition Claim (Fourth Claim for Relief)........................18

        D.      TOP Fails to State a Claim for Misappropriation of
                Likeness (Fifth and Sixth Claims for Relief)....................................19

1
2

# TABLE OF CONTENTS
## (*cont'd*)

3

**Page No.**

4
5

          1.     TOP Fails to Adequately Plead Use of TOP's Likeness ....................................................................19

6

          2.     TOP Fails To Plausibly Allege Temu "Knowingly" Misappropriated TOP's Likeness ...........................20

7
8

    E.    The Communications Decency Act (47 U.S.C. § 230) Bars TOP's State Law Claims........................................20

9

    F.    The Court Should Strike TOP's Irrelevant and Inflammatory Allegations under Fed. R. Civ. P. 12(f) .....................22

10

V.    CONCLUSION ...........................................................23

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*Altinex Inc. v. Alibaba.com Hong Kong Ltd.,*
  No. SACV1301545JVSRNBX, 2016 WL 6822235
5
  (C.D. Cal. Mar. 25, 2016)...................................................................5

6

*Arcsoft, Inc. v. Cyberlink Corp.,*
7
  153 F. Supp. 3d 1057 (N.D. Cal. 2015).............................................13

8

*Ashcroft v. Iqbal,*
9
  556 U.S. 662 (2009).................................................................3, 4, 9, 14

10

*Bell Atl. Corp. v. Twombly,*
11
  550 U.S. 544 (2007)............................................................................3

12

*Blue v. Johnson,*
  No. C 07-05370 SI, 2008 WL 2024995 (N.D. Cal. May 9, 2008)....................20
13

14

*Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co.,*
  No. 2:22-CV-00584-SB-SK, 2022 WL 3574423
15
  (C.D. Cal. July 22, 2022)...................................................................17

16

*Bravado Int'l Grp. Merch. Servs., Inc. v. Gearlaunch, Inc.,*
17
  No. CV 16-8657-MWF(CWX), 2018 WL 6017035
  (C.D. Cal. Feb. 9, 2018) ...................................................................20
18

19

*Candyman Kitchens, Inc. v. Sweets Indeed, LLC,*
  2020 WL 3803936 (C.D. Cal. Apr. 9, 2020).....................................13
20

21

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ......................................................................16
22

23

*Cleary v. News Corp.,*
  30 F.3d 1255 (9th Cir. 1994) ............................................................16

24

*Cross v. Facebook, Inc.,*
25
  14 Cal. App. 5th 190 (2017) .............................................................20

26

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
27
  300 F. Supp. 3d 1073 (S.D. Cal. 2017) ............................................16

28

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ...................................................22

*Free Kick Master LLC v. Apple Inc.*,
    140 F. Supp. 3d 975 (N.D. Cal. 2015)....................................12, 21

*GMA Accessories, Inc. v. BOP, LLC*,
    765 F.Supp.2d 457 (S.D.N.Y. 2011) ..........................................9

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) ....................................................13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003)...........................................................18

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011)............................................................17

*Lucasfilm Ltd. v. Ren Ventures Ltd.*,
    2018 WL 2392963 (N.D. Cal. Apr. 24, 2018)...............................16

*MaiBo v. WhaleCo, Inc.*,
    No. 23 C 2793, 2024 WL 1859730 (N.D. Ill. Apr. 29, 2024)............12

*Marco Bicego S.P.A. v. Kantis*,
    No. 17-CV-00927-SI, 2017 WL 2651985
    (N.D. Cal. June 20, 2017)........................................................17

*McGurr v. N. Face Apparel Corp.*,
    No. 221CV00269SBPDX, 2021 WL 4706984
    (C.D. Cal. Aug. 27, 2021)..........................................................4

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
    No. CV1202943MMMFFMX, 2013 WL 12129642
    (C.D. Cal. July 31, 2013)....................................................22, 23

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ..................................................21

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV11-07098 AHM SHX, 2013 WL 2109963
(C.D. Cal. Mar. 8, 2013) ......................................................................21

*Perfect 10, Inc. v. Google, Inc.*,
No. CV 04-9484 AHM, 2010 U.S. Dist. LEXIS 145449
(C.D. Cal. July 30, 2010) .....................................................................19

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
2025 WL 869209 (9th Cir. Mar. 20, 2025) ..........................................21

*Roffman v. Rebbl, Inc.*,
653 F. Supp. 3d 723 (N.D. Cal. 2023)..................................................17

*Scott & Addison, LLC v. Pinkblush.com*,
No. 8:20-CV-01160-SB-DFM, 2021 WL 3579413
(C.D. Cal. Apr. 5, 2021) .........................................................................4

*Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*,
No. 1:23-CV-02697, 2024 WL 5221272 (N.D. Ill. Dec. 23, 2024) ..............8, 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .................................................................8

*Spy Optic, Inc. v. Alibaba.com, Inc.*,
163 F. Supp. 3d 755 (C.D. Cal. 2015)..................................................15

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...............................................................4

*Survivor Prods. LLC v. Fox Broad. Co.*,
No. CV01-3234 LGB (SHX), 2001 WL 35829267
(C.D. Cal. June 12, 2001) .....................................................................23

*Tiffany (NJ) Inc. v. eBay, Inc.*,
600 F.3d 93 (2d Cir. 2010) .....................................................................8

*Tre Milano, LLC v. Amazon.com, Inc.*,
No. B234753, 2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012) ........9

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ..................................................................22

*Wong v. Arlo Techs., Inc.*,
   No. 19-CV-00372-BLF, 2019 WL 7834762
   (N.D. Cal. Dec. 19, 2019) .......................................................................2

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   2020 WL 3984528 (C.D. Cal. July 10, 2020) .........................................8

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023), cert. denied, 144 S.Ct. 824 (2024) .......15

*YZ Prods., Inc. v. Redbubble, Inc.*,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) ..................................................21

## OTHER AUTHORITIES

15 U.S.C. § 1114................................................................................4, 12, 14

15 U.S.C. § 1117.....................................................................................4, 14

15 U.S.C. § 1125.....................................................................................4, 14

47 U.S.C. § 230..............................................................................1, 20, 21

47 U.S.C. § 230..........................................................................................20

California Business and Professions Code § 17200 .........................16, 17

# I. __INTRODUCTION__

Twenty One Pilots ("TOP") initiated this action against Whaleco, Inc. ("Temu") for listing and selling allegedly infringing products through the Temu.com website. However, TOP's First Amended Complaint ("FAC") suffers from the same fundamental problem as its original Complaint: it fails to plead any plausible facts supporting its conclusory allegation that Temu—rather than independent third-party sellers—made or sold the allegedly infringing products.

The FAC's screenshots and cited sources undermine TOP's infringement theory. None of the blurry and misleadingly cropped screenshots of the accused product listings identify *Temu* as the party that made or sold the products. The complete screenshots of other product listings that TOP does include confirm that *third-party sellers* were responsible for creating the listings and selling the products. The FAC also relies on allegations in other lawsuits and publications that, though subject to Temu's Motion to Strike pursuant to FRCP 12(f), contradict TOP's infringement allegations. Those other lawsuits and publications confirm that Temu acts as an intermediary, hosting third-party product listings through the Temu.com website, a role fundamentally at odds with TOP's theory of liability.

TOP's contributory trademark infringement claims also fail. The FAC offers only conclusory statements about Temu's alleged involvement with the sale of the goods at issue. Also, notably absent from the FAC are any specific allegations of how, when, or why Temu should have become aware of the alleged infringement. Moreover, Temu's prompt removal of the accused products defeats TOP's allegation that Temu knowingly allowed third-parties to sell allegedly infringing goods.

TOP's state law claims are similarly deficient. For example, TOP asserts state unfair competition claims. Because TOP based those claims on the same conduct at issue in its trademark and misappropriation claims, they fail for the same reasons, among other reasons. Even if TOP had stated plausible state law claims, they would nonetheless be subject to dismissal under 47 U.S.C. § 230, which shields online

marketplaces like Temu from liability based on the conduct of third-party users and content creators.

Finally, this lawsuit is particularly baseless considering Temu's responsible actions. In accordance with Temu's Intellectual Property Policy, once TOP alerted Temu of the alleged infringement, Temu removed the identified listings from its website. Despite Temu's good faith effort to address TOP's concerns, TOP proceeded with this lawsuit.

Because TOP's FAC fails to state any viable claims against Temu, the Court should dismiss the FAC in its entirety without leave to amend.

## II.  <u>TEMU'S BUSINESS MODEL AS AN ONLINE MARKETPLACE</u>

As supported by the sources cited in the FAC, Temu is an online retail sales platform that hosts product listings from third-party sellers on its website. For example, TOP cites a Congressional Select Committee report, which found that "Temu is an online retail platform" that "facilitates transactions between Americans and China-based sellers." (FAC at 2, n.2; Mayer Decl., Ex. 1 at 4). TOP also cites a complaint filed in Nebraska state court, which describes Temu as "a marketplace for Chinese suppliers to offer their products" through "Temu's network of more than 80,000 China-based sellers." (FAC, Ex. 2 at ¶¶ 59, 61).[1] TOP also cites a complaint filed in Massachusetts district court, which alleges that "Temu operates an online marketplace that connects consumers and third party sellers" and that "[p]roducts on

---

[1] Although TOP cites URLs from which the Congressional Select Committee report and Nebraska state court complaint can be accessed, it did not attach copies of those documents as exhibits. Under the incorporation by reference doctrine, the Court may consider the content of those documents on a motion to dismiss if the FAC refers extensively to the documents or the documents form the basis for TOP's claims. *Wong v. Arlo Techs., Inc.*, No. 19-CV-00372-BLF, 2019 WL 7834762, at *4 (N.D. Cal. Dec. 19, 2019). Here, TOP cites these two documents in the introduction of its FAC and thus TOP apparently contends these documents form the basis for some of its claims.

the Temu online marketplace are available for purchase from third party sellers." (FAC, Ex. 1 at ¶¶ 15, 17).

As a responsible online sales platform, Temu takes intellectual property rights seriously and maintains strict intellectual property policies that govern its platform. *See* Temu – Intellectual Property Policy, *available at* https://www.temu.com/intellectual-property-policy.html (last updated Mar. 2, 2025). Rights holders may report allegedly infringing listings via Temu's online IP Portal or to Temu's DMCA Designated Agent. *Id.*

Contrary to the allegations in the FAC (*see* FAC, ¶ 40), prior to filing this lawsuit, TOP did not attempt to utilize any of Temu's robust procedures to identify the potentially infringing listings, investigate the third-party sellers associated with such listings, or remove the potentially infringing listings. Instead, the first communication that Temu received from TOP regarding the allegedly infringing listings was a draft complaint. Upon receiving the draft, Temu promptly investigated the matter. Acting out of an abundance of caution and in accordance with its IP policies—not as an admission of merit to TOP's claims—Temu removed every listing that it could identify from the poor-quality screenshots provided.

### III. <u>LEGAL STANDARDS</u>

To survive a motion to dismiss under Rule 12(b)(6), TOP must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if TOP pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must accept all well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Moreover, the court is "not required to accept as true conclusory allegations which are

1  contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing,*
2  *Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). "There is no plausibility 'where the
3  well-pleaded facts do not permit the court to infer more than the mere possibility of
4  misconduct.'" *McGurr v. N. Face Apparel Corp.*, No. 221CV00269SBPDX, 2021
5  WL 4706984, at *1 (C.D. Cal. Aug. 27, 2021) (quoting *Iqbal*, 556 U.S. at 679).

## IV.  ARGUMENT

### A.   TOP Fails to State a Claim for Trademark Infringement

In its First, Second, Seventh, and Eighth Claims for Relief, TOP asserts claims
for direct trademark infringement, false endorsement, counterfeiting, and dilution.
TOP's First Claim for Relief is generically titled as a claim for "Trademark
Infringement" but does not specify any statutory or other basis for the claim. As
such, the Court should dismiss that claim. The Second, Seventh, and Eighth Claims
arise under the Lanham Act. Given the similarity of elements among these claims
(to the extent there is any basis in statute or otherwise for the First Claim for Relief),
courts in this district routinely analyze such claims together. *See, e.g. Scott &
Addison, LLC v. Pinkblush.com*, No. 8:20-CV-01160-SB-DFM, 2021 WL 3579413,
at *1 (C.D. Cal. Apr. 5, 2021) (analyzing claims under 15 U.S.C. §§ 1114 and 1125
together). Accordingly, those claims are addressed together below. [2]

---

[2] To the extent TOP's First Claim for Relief purports to arise under the
Lanham Act, its claim for punitive damages (FAC, ¶ 42) should be dismissed. *See*
15 U.S.C. § 1117(a) (expressly forbidding punitive damages for trademark
infringement). Moreover, to the extent TOP seeks enhanced damages for willful
counterfeiting, its allegations that Temu acted "willfully, maliciously, and
oppressively" (FAC, ¶¶ 42, 71, 75) or "willfully, wantonly, and recklessly" (FAC,
¶¶ 55, 62) are threadbare recitals unsupported by any facts. *Iqbal*, 556 U.S. at 678.
The FAC alleges no facts showing Temu knew of TOP or intentionally used TOP's
alleged marks.

1.   **TOP Fails to Plausibly Plead Use in Commerce**

In the Ninth Circuit, "use in commerce" is an essential element of any direct trademark infringement claim. *See Altinex Inc. v. Alibaba.com Hong Kong Ltd.*, No. SACV1301545JVSRNBX, 2016 WL 6822235, at *4 (C.D. Cal. Mar. 25, 2016) (collecting cases). As discussed below, however, TOP has failed to plausibly plead that Temu, as opposed to the third-party sellers responsible for the allegedly infringing product listings, used TOP's trademarks in commerce.

a.   **The Court Should Not Accept TOP's Contradictory Allegations**

TOP bases its infringement claims on the conclusory allegation that Temu directly manufactures and sells the accused products or otherwise controls their manufacture and sale. Not only is TOP incorrect, but its own allegations contradict its bare assertion that Temu, as opposed to third-parties, is responsible for making and selling the allegedly infringing products. Indeed, the external and internal sources cited in the FAC confirm Temu's role as a platform, not a seller.

For example, TOP cites a complaint filed in Massachusetts district court, which alleges that "Temu operates an online marketplace that connects consumers and third party sellers" and that "[p]roducts on the Temu online marketplace are available for purchase from third party sellers." (FAC, Ex. 1 at ¶¶ 15, 17). The Massachusetts complaint also states that Temu discloses third-party seller information "via a store information link on both standard product listings and on the abbreviated product listings that are visible in gamified shopping experiences" and that the "store information" links lead "to a pop-up containing the full name and physical address of the seller that is selling the product described in the listing." (*Id.* at ¶¶ 28, 30).

Just as described in the Massachusetts complaint, and in contradiction to TOP's infringement claims, one of TOP's screenshots from an allegedly infringing listing shows that third-party sellers, ***not Temu***, are responsible for creating the

contents of the product listing and selling the advertised product. The product listing contains a "sourced from" link identifying that a third-party seller is responsible for the listing. (FAC, ¶ 15). As annotated below, the FAC's screenshots specifically show that the good is sold by the "DXwsdsock" store and, as generally discussed in the Massachusetts complaint, contains a pop-up with the name of and address of that **third-party seller**. (FAC, ¶¶ 15–16; FAC, Ex. 1 at ¶¶ 28, 30).



Similarly, although unrelated to the allegedly infringing goods, TOP includes other screenshots in its FAC. But like the above, these product-specific listings contain a "sold by" link identifying that third-party sellers are responsible for the listings and further confirm for each that the product "ships from this seller."



(FAC at 4).

Thus, unsurprisingly, TOP heavily crops the vast majority of screenshots from the Temu.com website purporting to show allegedly infringing goods (FAC, ¶¶ 20–21). By presenting those screenshots as TOP has, TOP fails to identify the product-specific listings that correspond to each of these goods or identify any of the product-specific information contained in those listings, such as the seller or shipper. This omission is highly material and appears to be designed to mislead.

TOP's other external sources fare no better. TOP cites a Congressional Select

Committee report, which found that "Temu is an online retail platform" that "facilitates transactions between Americans and China-based sellers." (FAC at 2, n. 2; Ex. 1 at 4). TOP also cites a complaint filed in Nebraska state court, which alleges that "the Temu app provides a marketplace for Chinese suppliers to offer their products" through "Temu's network of more than 80,000 China-based sellers." (Ex. 2 at ¶¶ 59, 61). Moreover, TOP fails to mention that the Nebraska complaint bases its allegations on documents such as a short-seller report. (*Id.* at fns. 87, 91, 108).

These characterizations, introduced and incorporated by TOP into the FAC, are fundamentally at odds with its conclusory allegation that Temu is a manufacturer and direct seller. (FAC, ¶ 3). The Court should not accept such contradictory allegations as true for purposes of this motion. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"); *Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*, No. 1:23-CV-02697, 2024 WL 5221272, at *3 (N.D. Ill. Dec. 23, 2024) (finding allegations about Temu's alleged involvement in selling and distributing allegedly infringing goods did not state a plausible claim because they "offer contradictory statements about Temu's role in the sale of the goods").

### b.    Temu is an Online Sales Platform and Is Not Liable for Any Alleged Infringement

Consistent with the Congressional Select Committee report, Nebraska complaint, Massachusetts complaint, and un-cropped product listings discussed above, the reality is that Temu merely hosted the allegedly infringing product listings of third-party sellers on its online sales platform, Temu.com. But that is not enough to satisfy the "use in commerce" element of a direct trademark infringement claim. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010) (affirming judgement that eBay cannot be liable for direct infringement based on third-party seller listings of counterfeit goods); *see also Y.Y.G.M. SA v. Redbubble, Inc.*, 2020

- 8 -

WL 3984528, at *3 (C.D. Cal. July 10, 2020) (characterizing Redbubble's business as more similar to a service provider than a seller and granting summary judgment of no direct trademark infringement); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380, at *12 (Cal. Ct. App. Aug. 22, 2012) (finding Amazon a "transactional intermediary" not liable for direct infringement); *GMA Accessories, Inc. v. BOP, LLC*, 765 F.Supp.2d 457, 464 (S.D.N.Y. 2011) ("a transactional intermediary is not treated as a seller").

Because TOP fails to plausibly plead that Temu is anything more than a transactional intermediary, or that Temu—as opposed to third-party sellers on Temu.com—used TOP's alleged trademarks in commerce, TOP's direct infringement claims fail as a matter of law and must be dismissed.

### c.    TOP's Remaining Allegations are Conclusory and Devoid of Factual Support

TOP's remaining allegations concerning "use in commerce" are wholly conclusory. Indeed, many of TOP's allegations merely parrot the language of the Lanham Act. (*See, e.g.*, FAC, ¶ 34 ("Temu has ***used in commerce*** a mark substantially similar to the Subject Marks …."), ¶ 81 ("Temu ***used in commerce*** counterfeit or copied registered marks in connection with the sale of goods that [is] likely to cause confusion without the consent or authorization of Plaintiff.")). Such "[t]hreadbare recitals of the elements … supported by mere conclusory statements" cannot sustain TOP's trademark infringement claims. *Iqbal*, 556 U.S. at 678.

The FAC's other allegations are also wholly conclusory, without any well-pled basis in fact, and otherwise untethered from TOP's infringement allegations. For example, TOP alleges "on information and belief" that "Temu is not a passive marketplace" and sells products "for which it directs the manufacture and ships and/or otherwise exercises control." (FAC, ¶ 10). Not only is this allegation conclusory, but it says nothing about Temu's purported use in commerce of TOP's alleged trademarks. Even accepting TOP's self-serving statements as true, they still

offer no well-pled factual support for TOP's claims because they have nothing to do with any of the allegedly infringing articles identified in the FAC.

None of TOP's remaining allegations suggest that Temu, as opposed to independent third-party sellers, was responsible for or otherwise controlled the manufacturing, advertising, and/or sale of any of the allegedly infringing products. For example, TOP relies on the Massachusetts complaint (discussed above) to allege that Temu "obfuscates and makes it difficult to discern its true relationship with the purported third-party sellers on its website." (FAC, ¶ 11 (citing Ex. 1 at ¶ 8)). But the screenshots in the FAC, which clearly display a store chat function available to customers, demonstrate that Temu has addressed the seller-related disclosure obligations discussed in the Massachusetts complaint. TOP also fails to explain how those allegations are related, in any way, to Temu's alleged infringement of TOP's trademarks. More importantly, however, the Massachusetts complaint contradicts TOP's infringement theory, by stating that "Temu operates an online marketplace that connects consumers and third party sellers" and that "[p]roducts on the Temu online marketplace are available for purchase from third party sellers." (FAC, Ex. 1 at ¶¶ 15, 17).

Equally unavailing are TOP's allegations, on "information and belief," that Temu "engag[es] in a deceptive scheme known as 'false reference pricing,'" "commonly generates multiple separate independent listings for identical products," and "regularly creates its own advertisements for unlicensed and infringing products." (FAC, ¶¶ 12–14). Although TOP relies on the same Nebraska complaint discussed above for support, the cited paragraphs do not support, and instead largely contradict, TOP's infringement theory. For example, paragraph 196 concerns alleged "false reference pricing" by third-party sellers on the Temu.com marketplace. (*See* FAC, Ex. 2 at ¶ 196). Paragraph 213 confirms that Temu provides IP rightsholders the opportunity to "request that Temu review" potentially infringing products on the Temu.com marketplace. (*Id.* at ¶ 213). Paragraph 217 identifies

certain "auto-generat[ed] ads" that allegedly promote infringing products. (*Id.* at ¶ 217). However, none of the auto-generated ads in the Nebraska complaint contain any of TOP's alleged trademarks, and the FAC does not allege that Temu used any TOP's trademarks in any auto-generated ads.

TOP further alleges on "information and belief" that "Temu sells products for which it has title from its own warehouses." (FAC, ¶ 18). TOP's support for that conclusory allegation is a screenshot from an unaccused product listing that says "local warehouse."



But TOP's conclusory leap is unsupported. Indeed, nothing in that screenshot attributes ownership or control of the "local warehouse" to Temu. On the contrary, the screenshot confirms the item is sold by a third-party.

TOP also alleges "[o]n information and belief" that "Temu is responsible for the shipping and distribution of the goods at issue." (FAC, ¶ 19). TOP's apparent basis for this allegation is a photograph of a package (unrelated to this case) purportedly shipped after an order was placed on Temu.com. (*Id.*)  But again, TOP's

conclusory allegations are unsupported by its own pleadings. The packaging in no way suggests that Temu was involved with the manufacture or sale of the allegedly infringing products identified in the FAC. If anything, the packaging merely confirms that a third-party delivery service, GOFO, not Temu, is responsible for delivery.

None of the foregoing allegations contain any facts substantiating that Temu—as opposed to third-party sellers—made, offered to sell, or sold any of the allegedly infringing products. In two separate past proceedings, the Northern District of Illinois dismissed trademark infringement claims against Temu based on similarly vague and conclusory allegations. *See Shenzhen Kangmingcheng Tech. Co.*, at *3 ("The paragraphs that [Plaintiff] points to in arguing against dismissal are mere conclusory statements that do not contain any concrete facts about Temu."); *see also MaiBo v. WhaleCo, Inc.*, No. 23 C 2793, 2024 WL 1859730, at *3 (N.D. Ill. Apr. 29, 2024) (dismissing direct infringement claim based on speculative allegations untethered from allegedly infringing sales). This Court should do the same.

### 2.    <u>TOP Fails to Plausibly Plead a Likelihood of Confusion</u>

The Court should dismiss TOP's First, Second, and Seventh Claims for Relief for the additional reason that TOP fails to plausibly plead a likelihood of confusion. *See Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979 (N.D. Cal. 2015) (allegation that "defendant's use of the marks in commerce is likely to cause confusion" is an essential element of direct infringement claim).

As an initial matter, the FAC alleges that TOP "own registered trademarks" corresponding to four serial numbers. (FAC, ¶ 8). But only two correspond to TOP's *registered* marks. The other two are pending applications.[3]  Because a claim under 15 U.S.C. § 1114 applies only to *registered* marks, TOP's § 1114 claim (Seventh Claim for Relief) fails as a matter of law with respect to the two unregistered marks.

---

[3]TOP's applications are Serial Nos. 98422355 and 98422349.

Further, while the FAC includes images of purportedly infringing product listings (*see* FAC, ¶ 21), the FAC fails to identify which of those listings contain which of TOP's alleged marks. The FAC fails to explain how or why any of the listings could confuse consumers as to the origin or sponsorship of the products.

### 3.    TOP Fails to Plausibly Plead Trademark Dilution

#### a.    TOP's Fails To Plausibly Plead That Temu Used The Alleged Marks In Commerce Or When The Alleged Marks Became Famous

The Court should dismiss TOP's Eighth Claim for Relief because TOP fails to plausibly plead trademark dilution. Indeed, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant uses the mark in commerce; (3) that use began after the mark became famous; and (4) that use is likely to cause dilution by blurring or tarnishment. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). For the same reasons explained above regarding the trademark infringement claims, TOP has not plausibly alleged that Temu is using the asserted marks in commerce.

Similarly, even if TOP could plausibly plead that Temu "used" the marks, TOP nonetheless fails to plead that such use "began after the mark became famous." *Id.* Indeed, nowhere in the FAC does TOP allege ***when*** the asserted marks allegedly became famous, or which marks in particular TOP asserts are famous. Moreover, neither a conclusory allegation that the marks are "famous" nor alleging that the marks are famous in a niche segment, such as TOP's fans, is sufficient. *Candyman Kitchens, Inc. v. Sweets Indeed, LLC*, 2020 WL 3803936, at *5 (C.D. Cal. Apr. 9, 2020);  *Arcsoft, Inc. v. Cyberlink Corp.,* 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) (dismissing dilution claims by plaintiffs  even with 20 million users). Thus, TOP's dilution claim should be dismissed.

#### b.    TOP's Dilution Claims Are Conclusory

TOP also fails to plausibly plead dilution under either a blurring or

tarnishment theory. Instead, TOP merely recites the dilution statute and alleges, in conclusory fashion, that "Temu's sale of products is likely to cause dilution by blurring" and "Temu's website listing products for sale that are offensive and obscene … is likely to cause dilution by tarnishment …." (FAC, ¶¶ 91–92; *see also id.*, ¶¶ 89, 93 ("Temu listing for sale of products containing Plaintiff's marks alongside both substantially similar and offensive items diluted Plaintiff's marks by both blurring and tarnishment.")). Such threadbare recitals of the elements of TOP's dilution claim, supported by mere conclusory statements, do not satisfy Rule 8, and the Court need not accept them as true. *Iqbal*, 556 U.S. at 678.

Moreover, regarding dilution by tarnishment, the FAC fails to allege any facts to plausibly suggest an improper association between TOP's mark and any inferior or offensive product. At most, the FAC alleges that Temu has listed for sale products containing TOP's marks "along side" products that are offensive and obscene. (FAC, ¶¶ 89, 92–93). But the FAC does not identify any examples where that occurred. Nor does the FAC identify any purportedly offensive or obscene product listings that contain any of the TOP marks. Without plausible allegations demonstrating that consumers would associate the alleged marks with offensive content by virtue of them existing together somewhere on the same online marketplace, TOP's tarnishment claim fails.

Accordingly, the Court should dismiss TOP's Eighth Claim for Relief.[4]

**B.    TOP Fails to State a Claim for Contributory Trademark Infringement**

To state a claim for contributory infringement against a service provider, like Temu, TOP must sufficiently plead that Temu "(1) continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement,

---

[4] TOP's Eighth Claim for Relief arises under 15 U.S.C. § 1125. TOP asserts entitlement to treble damages for that claim based on 15 U.S.C. § 1117(b)(1). (FAC, ¶ 95). However, § 1117(b)(1) only applies to claims for violations of section 1114(1)(a). The Court should thus strike TOP's claim for treble damages.

and (2) had direct control and monitoring of the instrumentality used by a third party to infringe." *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 766 (C.D. Cal. 2015) (internal quotations omitted). Regarding the knowledge element, "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods to be liable for contributory trademark infringement. Instead, defendants must have contemporary knowledge of which *particular* listings are infringing or will infringe in the future." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023) (internal quotes and citation omitted), cert. denied, 144 S.Ct. 824 (2024).

The FAC merely attempts to parrot the elements of contributory infringement. *See generally e.g.* FAC, ¶¶ 100–103. For example, it alleges that Temu "knew or had reason to know" that Temu or its vendors would "use the goods to infringe the plaintiff's trademark and was infringing the plaintiff's trademark and continued to supply its services." (FAC, ¶ 101). To the extent TOP's allegation can be deciphered, it is on its face conclusory, and untethered to any specific product, vendor, or alleged trademark right. TOP's pleadings fail because they do not provide any allegations regarding how, why, or when Temu allegedly should have known of the purported infringement. Although TOP provides a lone product listing allegedly live as of November 20, 2025 to bolster its claim that Temu "continued" to infringe (FAC, ¶ 17), notably absent from the FAC is an allegation that TOP ever notified Temu of that listing.

TOP cannot cure these deficiencies. Online marketplaces like Temu are not obligated to sift through millions of product listings to identify potential trademark infringement, so long as those marketplaces have safeguards in place to investigate and take down offending listings they are aware of. *Y.Y.G.M. SA*, 75 F.4th at 1003. And here, Temu promptly took down all the allegedly infringing listings immediately upon receipt of the draft complaint from TOP.

TOP's conclusory contributory trademark infringement claim should therefore be dismissed.

## C.    **TOP Fails to State a Claim for Unfair Competition**

### 1.    **TOP's Statutory Unfair Competition Claim (Third Claim for Relief) Fails for the Same Reasons as its Trademark Infringement Claims**

To support its statutory unfair competition claim, TOP relies on the same alleged conduct underlying its trademark infringement claims. (*See* FAC, ¶ 57 ("Temu, by means of the conduct described above, have engaged in, … unlawful, unfair, fraudulent and deceptive business practices under California Business and Professions Code §§ 17200 through 17203.")).

In the Ninth Circuit, "state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). "This means that if claims relying on the exact same factual conduct are validly dismissed under the Lanham Act, they should also be dismissed under California Unfair Competition law." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017). Because TOP's statutory unfair competition claim relies on the same conduct underlying its trademark infringement claims, the Court should dismiss the claim for the same reasons discussed above.[5]

---

[5] To the extent TOP seeks to assert the "fraudulent" or "unfair" prongs of an unfair competition claim, its allegations are insufficient. Regarding the "fraudulent" prong (*see, e.g.,* FAC, ¶¶ 57–59 alleging "fraudulent" conduct), the FAC fails to satisfy the heightened standard of Rule 9(b). *Lucasfilm Ltd. v. Ren Ventures Ltd.*, 2018 WL 2392963, at *5 (N.D. Cal. Apr. 24, 2018). Regarding the "unfair" prong, the FAC fails to allege that the accused conduct "threatens an incipient violation of an antitrust law, or that violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los*

Moreover, TOP fails to plead economic injury sufficient to establish standing to bring its statutory unfair competition claim. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (a plaintiff has standing if it "has suffered injury in fact and has lost money or property as a result of the unfair competition"). Here, the FAC does not identify any economic injury resulting from Temu's alleged unfair business practices. Instead, the FAC merely alleges that TOP has suffered "loss of profits" and "dilution in the value of their rights and reputations" in "amounts which are not yet ascertainable." (FAC, ¶ 60). But such conclusory allegations do not establish an economic injury sufficient to confer standing. *See Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co.*, No. 2:22-CV-00584-SB-SK, 2022 WL 3574423, at *2 (C.D. Cal. July 22, 2022) (dismissing unfair competition claim based on conclusory allegations that plaintiff "has sustained, is sustaining, and/or is likely to sustain" actual damages); *see also Marco Bicego S.P.A. v. Kantis*, No. 17-CV-00927-SI, 2017 WL 2651985, at *5 (N.D. Cal. June 20, 2017) (dismissing unfair competition claim for lack of standing based only on allegations of reputational injury).

Finally, even if TOP had plausibly alleged a statutory unfair competition claim, the Court should nonetheless dismiss TOP's demand for disgorgement of profits, actual damages, and statutory damages resulting from the alleged misconduct. (FAC, ¶¶ 59, 60, 62). "It is well-established that claims for relief under [§ 17200] are limited to restitution and injunctive relief." *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023). Because disgorgement of profits, actual damages, and statutory damages are not available remedies for a § 17200 violation, the Court should dismiss TOP's damages claim. *See Bragg Live Food Prods., LLC.* 2022 WL 3574423, at *4 (granting motion to dismiss demand for damages that were

---

*Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Instead, the FAC offers only the conclusory and threadbare assertion that harm "far outweighs the utility," without any supporting facts. (FAC, ¶ 57).

- 17 -

unavailable as a matter of law); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1152 (2003) (holding that disgorgement of profits is not an available remedy under unfair competition law).

Accordingly, the Court should dismiss the Third Claim for relief.

### 2.    TOP Fails to Plausibly Plead a Common Law Unfair Competition Claim (Fourth Claim for Relief)

In support of TOP's common law unfair competition claim, TOP relies, at least in part, on the same conduct underlying its other claims. (*See* FAC, ¶ 64 (incorporating by reference other paragraphs of the FAC)). To the extent such conduct forms the basis for TOP's common law claim, the Court should dismiss the claim for the same reasons discussed above.

Moreover, TOP's allegations are not plausible. First, to the extent TOP's claim relies on the existence of third-party "allegations of egregious and horrific business practices" (FAC, ¶ 65), it fails to explain how such allegations, even if true, are related to Temu's alleged use of TOP's trademarks on the Temu.com website. Likewise, the FAC fails to explain how the mere existence of unspecified ***allegations levied by third-parties*** could possibly constitute an unlawful, unfair, or fraudulent business practice of ***Temu***.

Second, to the extent TOP's claim relies on Temu's alleged sales of "products that shock the conscience" (FAC, ¶ 65), the FAC fails to identify any relationship between the allegedly "shocking" listings (as pictured in the FAC[6]) and any of the allegedly infringing product listings on the Temu platform. Indeed, the FAC fails to explain how product listings that do not appear to contain any reference to TOP's

---

[6] At paragraph 65 of its unfair competition claim, TOP refers to products "set forth below" as examples of the allegedly 'shocking' listings. The FAC does not provide any exemplary product listings below this allegation. However, in the section titled "Introduction" (*see* FAC at 4), the FAC identifies two such examples, and Temu assumes the reference in paragraph is to those images.

trademarks and do not appear on the same listing page as TOP's alleged trademarks could possibly tarnish or otherwise devalue TOP's trademarks. Accordingly, the Court should dismiss the Fourth Claim for Relief.

**D.**    **TOP Fails to State a Claim for Misappropriation of Likeness (Fifth and Sixth Claims for Relief)**

TOP asserts statutory and common law misappropriation of likeness claims, respectively, for Temu's alleged unauthorized use of "Plaintiff's (and its members') names, likeness, and signatures on products and advertising." (FAC, ¶ 69). The Court should dismiss these claims for several reasons.

**1.**    **TOP Fails to Adequately Plead Use of TOP's Likeness**

"In order to prove a right of publicity claim under section 3344, a plaintiff must show that *the defendant* appropriated the plaintiff's name or likeness for commercial purposes, and there must be a direct connection between the defendant's use of the likeness and that commercial purpose." *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2010 U.S. Dist. LEXIS 145449, at *40 (C.D. Cal. July 30, 2010). "[B]oth the statutory and common law versions of a right of publicity claim require that the defendant actually use the plaintiff's likeness." *Id.*

As an initial matter, the FAC fails to plead what likeness rights TOP purports to own. (FAC, ¶ 69). Indeed, TOP pleads that it owns the "relevant" publicity and likeness rights but does not explain what those rights consist of. (*Id.*). Further, the FAC never identifies what specific products or advertisements the alleged publicity and likeness rights were used on.

TOP's claim also fails for much the same reason its Lanham Act claims fail—TOP cannot establish that *Temu* used the alleged likeness at issue here, rather than third-party sellers. It is insufficient to allege that Temu simply contributed to third-party violations. *Perfect 10*, 2010 U.S. Dist. LEXIS 145449, at *40 ("'Contributing' to someone's violation of something is not the same as actually 'violating' it.");

*Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 209, (2017) (dismissing California right of publicity claims where the content at issue was created by third-parties).

### 2.    TOP Fails To Plausibly Allege Temu "Knowingly" Misappropriated TOP's Likeness

TOP's statutory misappropriation of likeness claim fails for the additional reason that TOP fails to allege that Temu *knowingly* used TOP's likeness. *See* § 3344(a) (". . . any person who knowingly uses…"); *Bravado Int'l Grp. Merch. Servs., Inc. v. Gearlaunch, Inc.*, No. CV 16-8657-MWF(CWX), 2018 WL 6017035, at *7 (C.D. Cal. Feb. 9, 2018) (dismissing claim under Section 3344 where plaintiff failed to plead with adequate specificity as to defendants' knowing use of the likeness and/or name of each, or any particular, musical performer).

Here, TOP has not alleged that Temu specifically "knew" about the allegedly infringing nature of the listings prior to TOP informing Temu of its allegations by sending a draft complaint. *See Blue v. Johnson,* No. C 07-05370 SI, 2008 WL 2024995, at *7 (N.D. Cal. May 9, 2008) (no evidence that defendant knowingly used plaintiff's name prior to when the parties were in communication regarding defendant's use of plaintiff's name). As soon as TOP informed Temu of the allegedly infringing listings, they were removed. Thus, TOP has failed to sufficiently allege facts demonstrating that Temu *knowingly* used TOP's likeness and TOP's claim under Section 3344 should therefore be dismissed.

### E.    The Communications Decency Act (47 U.S.C. § 230) Bars TOP's State Law Claims

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any state law to the contrary. 47 U.S.C. §§ 230(c)(1), (e)(3). The Ninth Circuit has interpreted the CDA to establish broad "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal citations omitted).

Courts in the Ninth Circuit routinely dismiss state law claims, such as misappropriation of likeness and unfair competition, against online service providers where third-party users created the allegedly infringing content. *See, e.g.*, *Free Kick Master*, 140 F. Supp. 3d at 983 (dismissing state unfair competition claims "in the absence of any allegation that Amazon or Google acted as an author of the challenged content"); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *15 (C.D. Cal. Mar. 8, 2013) (dismissing California misappropriation of likeness claims). That is precisely the case here.

Temu is an online marketplace that facilitates the sale of goods by third-party sellers to U.S.-based consumers and, as such, is entitled to § 230 immunity. *See YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 768–69 (N.D. Cal. 2021) (finding § 230 immunity applied to "ecommerce system" that "facilitates various online transactions between third parties by listing third party goods on Defendant's platform."); *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2025 WL 869209 (9th Cir. Mar. 20, 2025) (finding e-commerce platforms ISPs). The allegedly infringing goods identified in TOP's FAC are no exception. Those goods were offered on the Temu.com website by independent third-party sellers, who manufacture the goods, create the contents of the Temu.com listings for the goods, and cause the goods to be shipped to customers. The FAC contains no plausible allegations to the contrary. Indeed, as noted above, the content contained in the allegedly infringing listings originated with the third-party sellers, not Temu. Accordingly, CDA immunity applies, and the Court should dismiss TOP's state law claims. *See id.*; *Free Kick Master*, 140 F. Supp. 3d at 983; *Perfect 10,* 2013 WL 2109963, at *15.

**F.     The Court Should Strike TOP's Irrelevant and Inflammatory Allegations under Fed. R. Civ. P. 12(f)**

Under Rule 12(f), the Court may strike immaterial, impertinent or scandalous matters from TOP's FAC. *See* Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotations omitted). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* "Scandalous matter includes allegations that improperly cast a cruelly derogatory light on a party or person." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV1202943MMMFFMX, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) (inner quotations omitted). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations omitted).

TOP's FAC is rife with immaterial, impertinent, and scandalous allegations that seek to cast Temu in a negative light and otherwise distract from the merits—or lack thereof—of TOP's allegations and should be stricken. For example, in the "Introduction" to the FAC, TOP accuses Temu of being "unethical" and a "great threat[] to individuals, marketplaces, and the environment." (FAC at 2). The FAC heavily quotes an unrelated state court complaint—from Nebraska—that purports to accuse Temu of a variety of misconduct not at issue in this case. (*Id.*) TOP goes on to cherry-pick several highly prejudicial quotes from online articles and other sources that further disparage Temu, its business model, and/or its purported negative impact on the global online retail marketplace. (*Id.* at 2–3).

None of these allegations form the basis for any of TOP's claims for relief. Indeed, none of the allegations relate to any of the allegedly infringing products identified in the FAC or otherwise speak to the alleged use of TOP's trademarks or

name on the Temu.com website. Accordingly, the Court should strike all the allegations in the "Introduction" to TOP's FAC as immaterial and impertinent. *See Mireskandari*, 2013 WL 12129642 at *4–5 (striking allegations of blackmail and criminal conduct unrelated to any asserted cause of action); *see also Survivor Prods. LLC v. Fox Broad. Co*., No. CV01-3234 LGB (SHX), 2001 WL 35829267, at *3 (C.D. Cal. June 12, 2001) (striking allegations based on opinions contained in articles and other publications because they "have no possible bearing on the controversy between the parties").

In its Fourth and Eighth Claims for Relief, TOP generally refers to Temu's purported "egregious and horrific business practices" and accuses Temu of "endorsing homophobia and violent criminal gang activity." (FAC, ¶¶ 65, 89). In support, the FAC refers to two third-party product listings that purport to "shock the conscience." (FAC at 4, ¶ 65). Neither of those listings form the basis for any of TOP's other infringement or misappropriation claims. Instead, these allegations seek only to disparage and prejudice Temu and should be stricken. *See Survivor Prods.*, 2001 WL 35829267 at *3–4 (striking allegations containing pejorative opinions as "inflammatory and prejudicial").

## V. <u>CONCLUSION</u>

For the reasons stated above, TOP has failed to state plausible claims for trademark infringement, trademark dilution, misappropriation of likeness, and unfair competition against Temu. Accordingly, Temu respectfully requests that the Court dismiss TOP's FAC in its entirety and strike from the record the immaterial, impertinent, and scandalous allegations contained therein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 4, 2025        /s/ *Hans L. Mayer*
Matthew S. Bellinger
Hans L. Mayer
Nicholas A. Belair

Attorneys for Defendant
WHALECO, INC., D/B/A TEMU

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Whaleco, Inc., d/b/a Temu, certifies that this brief complies with the page limit set by the Court's standing order and contains 6,812 words, which complies with the 7,000 word limit of Local Rule 11-6.1.

Dated: December 4, 2025      */s/ Hans L. Mayer*
Hans L. Mayer